OPINION
The Dayton Municipal Court entered a judgment in favor of Federal Property Management ("Federal") in its forcible entry and detainer action against Cheryl Brown. Brown now appeals.
On April 4, 1997, Brown signed a lease for a one-year term for the apartment located at 1462 Fotip Lane #32, in the housing project known as Cornell Townhouses in Dayton, Ohio. At the expiration of the initial term, the lease agreement was to continue for successive terms of one month, unless the lease was terminated pursuant to paragraph twenty-four. The lease provided that Brown's below-market rent would be subsidized by the United States Department of Housing and Urban Development ("HUD").
Paragraph twenty-four of the lease provided that any landlord-initiated termination of tenancy "must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement" and stated that Federal may terminate the tenancy only for the tenant's "material noncompliance" with the terms of the lease, "material failure" to comply with obligations imposed by state law, criminal activity threatening other tenants' health, safety, or peaceful enjoyment of the premises or involving drugs, or "other good cause." The definition of "material noncompliance" included substantial violations of the lease and repeated minor violations of the lease that disrupted the livability of the project, adversely affected other tenants' health, safety, and quiet enjoyment of the premises, interfered with management of the housing project, or adversely affected its financial position. The provision further stated:
 c. If the Landlord proposes to terminate this Agreement, the Landlord agrees to give the Resident written notice of the proposed termination. If the Landlord is terminating this Agreement for "other good cause," the termination must be mailed to the Resident or hand-delivered to the dwelling unit in the manner required by HUD at least 30 days before the date the Resident will be required to move from the unit. Notices of proposed termination for other reasons must be given in accordance with any time frames set forth in State and local law. Any HUD-required notice period may run concurrently with any notice period required by State or local law. All termination notices must:
* specify the date this Agreement will be terminated;
 * state the grounds for termination with enough detail for the Resident to prepare a defense;
 * advise the Resident that he/she has 10 days within which to discuss the proposed termination of tenancy with the landlord. The 10-day period will begin on the earlier of the date the notice was hand-delivered to the unit or the day after the date the notice is mailed. If the Resident requests the meeting, the Landlord agrees to discuss the proposed termination with the Resident; and
 * advise the Resident of his/her right to defend the action in court.
 d. If an eviction is initiated, the Landlord agrees to rely only upon those grounds cited in the termination notice required by paragraph 24c.
Attached to the lease was a copy of Federal's house rules and regulations, which Brown agreed to follow, and "Form HUD 55059, Certification and Recertification of Tenant Eligibility."
On April 14, 1998, Cathy Brewer, Federal's property manager, sent Brown a standard letter, which she also sent to other tenants, to inform her that if she did not "willingly vacate" her apartment, she would face eviction proceedings for violating the terms of her lease, house rules and regulations, and her "responsibility and obligation required to remain in housing." The alleged violations by Brown stemmed from Brown's children's "increasing and more serious" acts of misconduct, such as curfew violations, causing disturbances to neighbors, and the March 23, 1998 vandalism and theft of the community room. Brewer addressed Brown's continued failure to comply with the terms of her lease, the house rules and regulations, and her duties as a tenant. Brewer stated that, despite previous meetings, conversations, advisements, and agreements, the conditions "have never been complied with or cooperated with any longer than only briefly when a specific and particular situation occur[r]ed." Brewer's letter also expressed, "Your history is repeatative [sic] and in the instance of your minor children's involvement you may have very well attempted to instruct and supervise at some time, however these efforts as [well as] Management's have continuously failed." Brewer further stated that "[i]t is un-fortunate that there is no need to request meetings or telephone to discuss this matter; the context is very clear."
On April 28, 1998, Brown was served with a written notice that her lease would be terminated on May 29, 1998 for "Non compliance of lease and House Rules and Regulations (Parts 13-C and 13-D 1, 2 and 3)," which stated Brown's agreement not to disturb the rights and comfort of neighbors and not to "engage in or permit unlawful activities in the unit, in the common areas, on or off the project grounds." The termination notice informed Brown of her rights to defend herself in any court action brought against her and to discuss with the landlord the termination within ten days from the date of the notice. The notice contained a detailed list of incidents of minor children being outside after hours without adult supervision, disturbing neighbors and property, causing excessive noise, fighting, loitering, and disregarding policies and house rules and regulations.
On June 1, 1998, Federal sent Brown a letter asking her to leave the premises immediately and warning her that, if she did not leave, she would face an eviction action. On June 19, 1998, Federal filed a complaint in forcible entry and detainer against Brown, who then filed an answer denying that she had breached the lease and setting forth several affirmative defenses.
A trial was conducted before a magistrate on August 14, 1998. The evidence was as follows.
Brown testified that she had lived in the apartment with her fifteen and twelve year old daughters since April 4, 1997. She did not deny that "there's been some problems at the apartment complex that [her] kids have been involved in." When asked whether she acknowledged that her children had been "running around late and causing a problem," Brown replied, "yeah they told me and then I stopped them from doing that." Brown testified that she had attended a meeting at the office to discuss an argument involving her daughters and other children and that they had reached "an agreement about what would happen and it didn't happen [any] more." When asked about other incidents listed in the termination notice, Brown either denied her children's participation or stated that she did not recall the incidents or did not know whether they had been involved.
Brewer testified that she had been having ongoing "problems with not just [Brown's] children but with several" children residing in the housing complex and that despite her attempts to set up programs for the children, they had continued to "terrorize the properties." According to Brewer, "the parents knew that they were totally destroying the entire complex because of the terrible problems [of] the kids being unsupervised, outside after hours, destr[oying] property, [causing] tremendous vandalism, not cooperating with security when they did address a problem with them, * * * [playing] loud music, [and] fighting." Brewer testified that such incidents, which she had documented and reported to the parents, were in violation of the lease agreements and the house rules and regulations. Brewer stated that, when she had met with Brown to discuss certain incidents, Brown had not denied her children's involvement. When asked if something had happened in April 1998 that prompted her to take action against Brown, Brewer replied that a group of children had broken into the community room, had vandalized the laundry room, and had stolen a big screen television, a VCR, and several games. She explained that she had thereafter spoken with Brown about moving out of her apartment and that Brown had initially agreed to move out but had later asked for more time in which to do so until finally refusing to leave, prompting Brewer to give her the termination notice.
At the close of Federal's case, Brown moved for dismissal due to Federal's failure to identify the HUD program under which Brown's rent was subsidized, its failure to provide Brown an opportunity to discuss the proposed termination, its failure to provide Brown with an opportunity to cure the breach, and its reliance on a reason not stated in the termination notice to justify the eviction action. The magistrate overruled the last branch of Brown's motion at trial and took the other three under advisement. On August 26, 1998, the magistrate issued a decision rejecting Brown's arguments for dismissal and granting restitution of the premises to Federal. Brown did not file objections to the decision. The trial court adopted the magistrate's decision. On September 1, 1998, Brown filed a notice of appeal and a motion for a stay of execution pending appeal, which the trial court granted. Brown asserts four assignments of error on appeal.
Although Federal does not argue that Brown waived her right to appeal, we note that Brown failed to filed objections to the magistrate's decision as required by Civ.R. 53(E)(3)(b), and she thus waived the right to appellate review of all but plain error. See Timbercreek Village Apts. v. Myles (May 28, 1999), Montgomery App. No. 17422, unreported; R.G. Real Estate Holding, Inc. v.Wagner (Apr. 24, 1998), Montgomery App. No. 16737, unreported. Because Civ.R. 53(E)(4)(a) authorizes the trial court to adopt the magistrate's decision in the absence of objections "unless it determines that there is an error of law or other defect on [its] face," we review the trial court's adoption of the magistrate's decision for failure "to correct an obvious error of law or other such defect in the decision." Divens v. Divens (Oct. 2, 1998), Clark App. No. 97 CA 0112, unreported.
 I. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S COMPLAINT, BECAUSE APPELLEE FAILED TO IDENTIFY AND PROVE WHICH HUD PROGRAM THE PARTIES WERE PARTICIPATING IN.
Brown contends that the trial court should have dismissed Federal's eviction action due to its failure to identify the HUD program under which her rent had been subsidized.
In support of her motion to dismiss the eviction action, Brown argued that because Federal had not identified the HUD program under which her rent was subsidized, the magistrate could not determine whether Federal had complied with all procedural requirements in terminating her tenancy. As authority for Federal's duty to identify the HUD program, Brown cited NormarCorp. v. Richardson (Mar. 3, 1994), Dayton M.C. No. 93-CVG-9922, unreported. Federal represented that Brown's apartment was considered "Section 8" housing, and Brown responded that there were several Section 8 housing programs, each governed by separate termination-of-tenancy regulations. When asked to identify the regulations that Federal had allegedly violated, Brown responded that "we don't know which regs are applicable to know even if there has been proof of any compliance." Federal stated that it had identified the applicable HUD program in its answers to interrogatories, which were not contained in the record before the trial court and are not in the record before us. The magistrate concluded that, because Brown's lease incorporated "HUD Form 55059" as an attachment, it "sufficiently identifies the program for this tenancy and the applicable notices for eviction."
HUD Form 55059 is applicable to project-based Section 8 tenants as well as "Public Housing and Section 8 Certificate tenants." The National Housing Law Project, HUD Housing Programs: Tenants' Rights (2 Ed. 1994) 3/20, Section 3.9, fn. 211. Even though there are common characteristics among Section 8 programs, they "differ with regard to * * * the applicable HUD regulations."Id. at 1/28, Section 1.3.7. See, also, White, Ohio Landlord Tenant Law (1999) 505, Appendix B. Because the various Section 8 programs are governed by different regulations, the incorporation of HUD Form 55059 does not sufficiently identify the applicable program. However, we cannot say that if Federal had identified the applicable program, the outcome of the eviction proceeding clearly would have been otherwise. It may well be that Federal complied with all termination-of-tenancy requirements applicable to Brown's housing program. Thus, we find no plain error in the magistrate's refusal to dismiss the eviction action based on the failure to identify the applicable HUD program.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S COMPLAINT, BECAUSE APPELLEE FAILED TO PROVIDE MRS. BROWN WITH A MEANINGFUL OPPORTUNITY TO DISCUSS HER PROPOSED TERMINATION.
Brown argues that Federal violated paragraph 24(c) of her lease and Section 880.607(c), Title 24, C.F.R. by denying her a meaningful opportunity to discuss the proposed termination of her tenancy. Brown argues that, although the April 28, 1998 termination notice stated that she had ten days "to discuss the termination with the landlord," Brewer's April 14, 1998 letter stating that "[i]t is un-fortunate that there is no need to request meetings or telephone to discuss this matter; the context is very clear" demonstrated that Federal had already conclusively decided to terminate her tenancy and that any discussion of the matter would be meaningless.
Paragraph 24(c) of Brown's lease provides Brown with a right to request a meeting and, if requested, to discuss the proposed termination with the landlord. Section 880.607(c), Title 24, C.F.R. requires the property owner to give written notice of any "proposed termination of tenancy, stating the grounds and that the tenancy is terminated on a specified date and advising the family that it has an opportunity to respond to the owner." In our judgment, the termination notice complied with paragraph 24(c) of the lease and with Section 880.607(c), Title 24, C.F.R., assuming its applicability. Furthermore, it was reasonable for the magistrate to conclude that the April 14, 1998 letter did not foreclose the possibility of a meeting between Brown and Federal. Brown does not claim that, after receiving the termination notice, she requested a meeting and was denied that opportunity by Federal. Although the letter may have made Brown less inclined to take advantage of this right, it was not unreasonable, much less plain error, to conclude that Brown had not been deprived of her right to meet with Federal to discuss the matters described in the termination notice when she had never made such a request.
The second assignment of error is overruled.
 III. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S COMPLAINT, BECAUSE APPELLEE FAILED TO GIVE MRS. BROWN AN OPPORTUNITY TO CURE THE BREACH.
Brown contends that Federal did not afford her an opportunity to cure the alleged breach of her lease as required by R.C.5321.11 and that Federal relied on reasons other than those stated in the termination notice as the basis for the eviction action.
R.C. 5321.11 provides:
 If the tenant fails to fulfill any obligation imposed upon him by section 5321.05 of the Revised Code that materially affects health and safety, other than the obligation described in division (A)(9) of that section, the landlord may deliver a written notice of this fact to the tenant specifying the act or omission that constitutes noncompliance with the pertinent obligations and specifying that the rental agreement will terminate upon a date specified in the notice, not less than thirty days after receipt of the notice. If the tenant fails to remedy the condition specified in the notice, the rental agreement shall terminate as provided in the notice.
R.C. 5321.11 requires a landlord to provide "a thirty-day notice to cure" when seeking to evict a tenant for breach of an R.C.5321.05 obligation. Parker v. Fisher (1984), 17 Ohio App.3d 103,105. See, also, Woodrose Ltd. Belmont Dev. Co. v. Debolt (June 20, 1991), Perry App. No. CA-403, unreported ("Should the tenant fail to correct or cure the alleged violations, and `holds over' past the thirty-day time period, then and only then may the landlord proceed to forcible entry and detainer as prescribed in R.C. 1923.02 * * *.").
R.C. 5321.11 required Federal to provide Brown a thirty-day notice and an opportunity to cure because the proposed termination was based on alleged violations of the terms of her lease that also implicated her duties under R.C. 5321.05(A). See SandefurMgt. Co. v. Wilson (1985), 21 Ohio App.3d 160, 162; Parker,17 Ohio App. 3d at 104. Brown does not challenge the contents of the termination notice; rather, she claims that the eviction action should have been dismissed because she had remedied the alleged violations during the thirty-day notice period. The magistrate refused to dismiss the eviction action on this basis because Federal had endured the problems caused by Brown's children for an entire year.
Brown and Brewer both testified that they had met on several prior occasions to discuss the incidents involving Brown's children. In the April 14, 1998 letter, Brewer described the ongoing and increasingly serious situations involving Brown's children and Brown's continued failure, despite several meetings and agreements, to prevent her children from continuing to cause disturbances. Because the evidence supported a finding that Brown had known about the ongoing problems involving her children and had only remedied specific situations, it was reasonable to determine that thirty days without incident did not show that Brown had cured the breach. Indeed, as long as Brown's children continued to live with her, there would be a potential for the reoccurrence of problems with Brown's children such as the landlord had experienced in the past. Thus, the magistrate did not commit error, much less plain error, in refusing to dismiss the eviction action based on Brown's claim that she had cured the breach.
Brown further asserts that the eviction action was based on an incident not described in the termination notice, as demonstrated by Brewer's testimony that she had been prompted to take steps toward terminating Brown's tenancy by the community room vandalism and theft. When asked what, if anything, had happened in April 1998 to cause her to take action against Brown, Brewer answered:
 Well, in general, and I probably would be overruled but it's not in the termination notice but what ended up happening is that at the property I provide a community room for the children and do lunches and do activities and a group of them broke in and literally stole a 38 inch big screen TV and VCR that I bought for the kids at the property. They vandalized the laundry room, broke the lock, stole a bunch of the games out and I did not witness one on one but I had to identify these problems because this became very serious.
Contrary to Brown's interpretation of Brewer's testimony on the community room incident, it was reasonable to determine that the termination of her tenancy was based on the ongoing situation involving her children's unruliness, of which the community room incident was just one example. The termination notice identified, and Brewer testified to, several previous incidents involving Brown's children upon which Federal had relied in pursuing the eviction action. Furthermore, because Brown received notice of the community room incident shortly after its occurrence, she was not prejudiced by Brewer's testimony on the community room incident in presenting her defense. See Sandefur,21 Ohio App.3d at 162-163.
The third assignment of error is overruled.
 IV. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S COMPLAINT, BECAUSE THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Brown contends that the trial court's decision to grant restitution of the premises to Federal was against the manifest weight of the evidence because the greater weight of the evidence demonstrated that her children had not been involved in the trouble-making incidents.
Brown points out that Brewer testified at trial that she did "not know if [Brown's] particular kids were involved," that she had not witnessed every incident of misconduct, and that her April 14 letter had identified a general problem involving several children. Brewer also testified, however, that when she had spoken with Brown about some of the incidents, Brown had not denied her children's involvement and had stated that she "couldn't be for sure [about a few of the incidents] but on most of these things there was never much of a conflict in any of the particular incidents." On cross examination, Brown stated that she would not deny that her children had been involved in some of the incidents.
In our judgment, the trial court did not commit error, much less plain error, in determining that Federal had presented credible evidence of Brown's children's involvement in several incidents constituting a breach of the terms of Brown's lease. Because the trial court's judgment was supported by the manifest weight of the evidence, the fourth assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Douglas B. Gregg
Randall J. Smith
Acting Magistrate Gary C. Schaengold